UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TIFFANY WILLIAMS,

        Plaintiff,                    Civil Action No. 11-15219

           v.                     District Judge PAUL D. BORMAN
                                       Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

—————————————————————/

### REPORT AND RECOMMENDATION

Plaintiff Tiffany Williams brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act.  Parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc. #12] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED.

### PROCEDURAL HISTORY

On May 4, 2010, Plaintiff applied for SSI, alleging disability as of September 15, 1998 (Tr.117-123).  After the initial denial of her claim, Plaintiff requested an administrative hearing, held on January 26, 2011 in Livonia, Michigan (Tr. 32).  Administrative Law Judge

("ALJ") Ramona Fernandez presided.  Plaintiff, represented by  attorney Barry Keller,

testified (Tr. 36-59), as did Vocational Expert ("VE") Michele Robb (Tr. 59-69).  On

February 1, 2011, ALJ Fernandez found Plaintiff not disabled (Tr. 20).  On August 23, 2011,

the Appeals Council denied review (Tr. 1-4).  Plaintiff filed the present action on November

28, 2011.

## BACKGROUND FACTS

Plaintiff, born December 23, 1988, was 22 at the time of the administrative decision

(Tr. 20, 117).  She completed 11th grade and worked previously as a fast food worker, maid,

and packer (Tr. 140-141).  She alleges disability as a result of a learning disorder (Tr. 139).

### A.    Plaintiff's Testimony

Plaintiff testified that she stood 5'10" and weighed 250 pounds (Tr. 36-37).  She

stated that because of her learning disability, she received "special services" while in school

but was able to take general classes in high school after ninth grade (Tr. 37).  She stated that

she was planning to take classes for a high school diploma in the coming months (Tr. 37).

Plaintiff alleged difficulty with mathematical symbols and story problems, but admitted that

she did not experience trouble running a cash register (Tr. 38).  She reported problems

reading, adding that while in school, she completed her schoolwork with the help of others

(Tr. 38).  Plaintiff testified that she quit a food service job to enter a job training program (Tr.

40).  Plaintiff stated that she had recently begun to look for a job, adding that her search was

limited to unskilled, non-managerial positions (Tr. 41).

Plaintiff stated that in the past six months, she received mental health counseling on a monthly basis (Tr. 43). She stated that she also sought treatment at a second facility in preparation for the administrative hearing (Tr. 43). Plaintiff reported that two months before the hearing, she was prescribed Trazodone (Tr. 44). She denied physical ailments (Tr. 44). Plaintiff testified that she lived by herself, managed her finances, drove, took public transportation, shopped, and performed self care activities without assistance (Tr. 45-46). She stated that she socialized with her parents and a friend (Tr. 47). She reported that she had reduced her use of alcohol recently from two glasses a day to only once a week or less (Tr. 47-48).

In response to questioning by her attorney, Plaintiff stated that she could read "some sections" of a newspaper, but could not read all of the words (Tr. 50). She added that she could generally understand a word when it was spoken (Tr. 51). Plaintiff opined that she would be unable to perform work involving a cash register because she was afraid of miscalculating the change to customers (Tr. 51). She stated that she was forgetful, noting that she had to "check all the time" to ensure that she would not miss an appointment (Tr. 52). She testified, in effect, that she would require supervision to complete her work tasks (Tr. 55-56). She alleged concentrational problems and long-term depression (Tr. 56-57). She alleged that up to three days a week, she became withdrawn and disinclined to leave her home, adding that at present she "force[d] [her]self to get out anyway" (Tr. 57-58).

**B.     Medical Evidence**

**1.  Treating Sources**

In January, 2009, Plaintiff reported an ongoing staff infection (Tr. 193). In February, 2009, Plaintiff obtained treatment for dry skin (Tr. 191). Plaintiff reported that she worked for Job Corps in Cleveland (Tr. 191). In July, 2009, Plaintiff sought emergency treatment for a rash (Tr. 181). She was prescribed Bactrim DS and released (Tr. 183). In April, 2010, Plaintiff sought treatment for weight loss (Tr 185).

In July, 2010, a mental health intake evaluation stated that Plaintiff was depressed because she was limited to minimum wage jobs (Tr. 206, 252). Plaintiff reported that she angered easily and had once stabbed an individual (Tr. 206-207, 252-253). Plaintiff stated that she had three drinks every night to help her sleep and sometimes used marijuana (Tr. 206). She indicated that she was trying to find babysitting or hair-styling work to make ends meet (Tr. 207). She was fully oriented and answered questions appropriately (Tr. 207). Psychiatrist Corina Lazar, M.D. assigned Plaintiff a GAF of 40[1] (Tr. 209, 254). In October, 2010, Dr. Lazar reported that Plaintiff had regular thoughts of suicide and a history of violence and anger (Tr. 279). Dr. Lazar found that Plaintiff's condition was stable and that she was able to live independently (Tr. 280). In December, 2010, she was prescribed Trazodone (Tr. 262).

Plaintiff sought psychological treatment at a second facility in January, 2011 (Tr. 284-289). She reported depression, forgetfulness, and low self esteem but denied suicidal

---

[1]A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR* ) (4th ed.2000).

ideation (Tr. 284).  She stated that she used alcohol to fall asleep (Tr. 285).  Social Worker

Linda Brown recommended individual therapy and treatment for alcohol abuse (Tr. 287). She

assigned Plaintiff a GAF of 60[2] (Tr. 287).

### 2.  Non-Treating Sources

In March, 2006, school psychologist Rhonda Y. Taylor completed a psychological

evaluation, noting a verbal IQ of 80 (low average), performance IQ of 111 (above average);

and full scale IQ of 93 (average) (Tr. 231, 246, 269).   Dr. Taylor noted that Plaintiff

displayed average judgment and common sense (Tr. 231).  Her reading skills were placed at

the 3.5 grade level and math at 4.7 (Tr. 235).  In December, 2009 Michael Matouk, M.A.

performed an psychological examination of Plaintiff on behalf of the SSA (Tr. 213-217).

Plaintiff denied taking current antidepressive medication (Tr. 213).  She stated that her

parents had been neglectful when she was growing up (Tr. 214).  Matouk noted that Plaintiff

was cooperative with good eye contact and normal psycho motor activity (Tr. 215).  Plaintiff

displayed limited mathematical skills but her thought processes were organized (Tr. 215).

Matouk assigned Plaintiff a GAF of 50[3] with a fair to good prognosis (Tr. 216).   A June,

---

[2]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR* )(4th ed.2000).

[3]
A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

2010 Psycho-Educational Evaluation indicated "low average" intellectual functioning (Tr.

202). Her mathematical skills were deemed "low" and broad reading and written language

skills, very low (Tr. 203). She was diagnosed with a "Specific Learning Disability" in basic

reading and reading comprehension (Tr. 204). Her full scale IQ was 84 (Tr. 264).

### C.  Vocational Expert Testimony

VE Michele Robb classified Plaintiff's former work as a fast food worker and maid

as exertionally light and unskilled[4] but noted that she required clarification as to whether the

jobs amounted to substantial gainful activity (Tr. 60, 179). The ALJ then posed the

following hypothetical limitations to the VE:

> I'd like you to assume an individual who is limited to unskilled work involving
> exertional limitations who is limited to unskilled work involving one or two
> step instructions that would not require concentration on detail or multiple
> tasks that would require only brief and superficial contact with the general
> public and that would not involve changes in the work setting or duties more
> than once a month. Could such an individual perform the past work that you
> identified? (Tr. 60-61).

In response, the VE testified that although such limitations would prevent Plaintiff

from performing her past jobs, she could work as a dishwasher (4,200 jobs in the regional

economy); stock clerk (6,900); and inspector (3,800) (Tr. 62). The VE stated that if the

---

4

   20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds.

hypothetical individual were also precluded from work requiring an hourly production quota, the inspector job would be eliminated (Tr. 62). However, she found that the additional limitation nonetheless allowed the individual to work as a "laundry worker" (2,800) (Tr. 62). She testified that if the need to read were included in the job description, the stock clerk position would be eliminated (Tr. 63). The VE stated that the original hypothetical question, plus the additional limitations, did not preclude the work of a groundskeeper (4,600) (Tr. 63-64). She indicated that the need to be absent from work more than one day a month would preclude all of the above jobs (Tr. 64). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 64). In response to questioning by Plaintiff's counsel, the VE appeared to concede that the inability to read would preclude work as a laundry worker (Tr. 65).

The ALJ discounted Plaintiff's allegations of disability as a result of depression, observing the paucity of mental health treatment records (Tr. 16). She cited treating records from the month before the hearing stating that Plaintiff was not depressed (Tr. 16). She also cited consultive records stating that Plaintiff displayed a normal memory and psychomotor activity (Tr. 16).

### D.    The ALJ's Decision

Citing the administrative transcript, the ALJ found that Plaintiff experienced the severe impairments  of "learning disorder, depressive disorder, intermittent explosive disorder, obsessive compulsive disorder and alcohol abuse" but that none of the conditions met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 11-12).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for unskilled

work with the following additional restrictions:

> [S]he is limited to unskilled work with 1 to 2 step instructions that would not require concentration on detailed or multiple tasks. She is limited to work requiring only brief and superficial contact with the general public. She cannot perform work requiring changes in the work setting or duties more than once per month. She cannot perform work with hourly production quotas. She cannot perform work requiring reading or calculation. Lastly, she can only perform work that allows for occasional daily instruction from a supervisor (Tr. 14).

Citing the VE's testimony, the ALJ found that Plaintiff could work as a dishwasher,

laundry worker and groundskeeper (Tr. 19).    She discounted Plaintiff's allegations of

disability, citing Linda Brown's January, 2011 findings stating that Plaintiff had a normal

concentrational abilities and a good prognosis (Tr. 17-18 citing 286-287).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of

Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir.

1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Psychiatrist Corina Lazar, M.D.

Plaintiff argues first that the ALJ erred by rejecting Dr. Lazar's July, 2010 intake assessment. *Plaintiff's Brief* at 5, *Docket #9.* Specifically, Plaintiff takes issue with the ALJ's criticism that Dr. Lazar's findings were supported by subjective complaints rather objective evidence. *Id.* (citing 17). Citing *Page v. Celebrezze*, 311 F.2d 757, 763 (5th Cir. 1963), she contends, in effect, that subjective complaints take on added significance in cases involving mental impairments which cannot be measured by "objective clinical or laboratory findings." *Id.* (internal punctuation omitted).

This argument does not provide a basis for remand. Plaintiff is correct that her limitations as a result of mental problems do not generally lend themselves to clinical or laboratory testing. However, in addition to observing that Dr. Lazar's findings were supported by mostly subjective complaints, the ALJ provided other good reasons for rejecting the psychiatrist's assessment. The ALJ noted that Dr. Lazar's findings stood at odds with a December, 2010 treating source observation showing Plaintiff was cooperative and goal directed with a normal mood and attention span (Tr. 17 citing 258). Notes from the same month state that Plaintiff denied depression (Tr. 16 citing 256). The ALJ also found that Dr. Lazar's findings were undermined by the fact that Plaintiff's claims of limitation were largely discountable (Tr. 17). The ALJ cited her own findings that Plaintiff was able to take care of her own needs, drive, handle finances, shop, and socialize with friends and family (Tr. 16-17). Because Dr. Lazar's findings are contradicted by both other treating

-10-

source findings and Plaintiff's wide range of activities, the ALJ did not err in rejecting them.[5]

### B.  Social Worker Linda Brown

Plaintiff also disputes the ALJ's allocation of "significant weight" to the January, 2011findings of social worker Linda Brown.  *Plaintiff's Brief* at 6 (citing Tr. 17-18).  She argues that Brown is not an "acceptable medical source"as the term is defined by the Social Security Regulations and thus, the ALJ's adoption of those findings constituted error.  *Id.*

Plaintiff is correct that under 20 C.F.R. §§ 404.1527(a) and 416.927(a)(2), only "acceptable medical sources" can provide medical opinions.  An acceptable medical source has been defined to include physicians, psychologist, optometrists, podiatrists, and speech pathologists. 20 C.F.R. §§ 404.1513(a) and 416.913(a).  The findings of non-physician medical sources such as nurse practitioners, physician assistants, licensed clinical social workers, and psychological therapists are not technically "acceptable medical sources." SSR 06–03p, 2006 WL 2006 WL 2329939, *2.  Nonetheless, the findings by "other" medical sources "should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id.*

The adoption of Brown's findings was permitted by SSR 06-03. The ALJ permissibly allotted significant weight to Brown's opinion, noting that it was "consistent with the

---

[5]

Moreover, the ALJ abided by the procedural requirements for a treating physician analysis as found in 20 C.F.R. § 404.1527(c)(2).

medical evidence of record, is supported by her objective findings and is generally consistent with the claimant's self-reported functional ability, specifically her testimony that she was capable of working" (Tr. 18).    Plaintiff's implied argument that the ALJ unwittingly accorded treating physician-like deference to Brown's opinion is contradicted by ALJ's acknowledgment that Brown was not an acceptable medical source under the Social Security Regulations (Tr. 17).  Moreover, while the ALJ analyzed Dr. Lazar's July, 2010 assessment as a "treating source" finding, it was in fact created at an intake assessment rather than made in the context of an ongoing treating relationship.  Because of the paucity of treating records in the transcript, the ALJ's reliance on Brown's comprehensive and supportable January, 2011 assessment was particularly appropriate.

In closing, it should be noted that the decision to uphold the ALJ's findings should not be read to trivialize Plaintiff's difficulties.  Nonetheless, the ALJ's determination that the Plaintiff was not disabled is generously within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #12] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED.

Any objections to this Report and Recommendation must be filed  within 14 days of

service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: January 23, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 23, 2013.

s/Johnetta M. Curry-Williams
Case Manager
